IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.     22-cv-00118

---

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Plaintiff,

v.

PAUL A. GARCIA,

    Defendant,

OFFICE GURU FRANCHISE GROUP, INC.,

    Relief Defendant.

---

**COMPLAINT AND JURY DEMAND**

Plaintiff, United States Securities and Exchange Commission ("SEC"), alleges as follows against Defendant Paul A. Garcia ("Garcia") and Relief Defendant Office Guru Franchise Group, Inc. ("Office Guru").

**INTRODUCTION**

1. This case involves Garcia's misappropriation of funds from investors in Gold Hawgs Development Corp. ("Gold Hawgs"), a company engaged in the development of a cryptocurrency, of which Garcia was the Chief Financial Officer ("CFO") and 50% owner.

2. From August through October 2019, Gold Hawgs and Garcia raised approximately $400,000 from 16 investors for the creation and promotion of a new "crypto currency" called the "gold hawg" token. Garcia and Gold Hawgs touted large potential returns for investors once Gold Hawgs' business plan came to fruition and the gold hawg tokens were offered to the public through an initial coin or token offering, but the business failed before reaching that stage.

3. Instead of using all of the money to develop, promote, and launch the gold hawg tokens as represented, beginning in August 2019 and continuing through July 2020 ("the Relevant Period"), Garcia misappropriated approximately $123,000 of money raised from investors by transferring investors' funds from Gold Hawgs' bank account to an account in the name of Office Guru, which he also controlled, and using the funds for various expenses unrelated to Gold Hawgs' business.

4. As a result of the conduct described in this Complaint, Garcia violated Section 17(a)(1) and (a)(3) of the Securities Act of 1933 ("Securities Act"), [15 U.S.C. § 77q(a)(1) and (a)(3)]; and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. § 78j(b)], and Rule 10b-5(a) and (c) thereunder, [17 C.F.R. § 240.10b-5(a) and (c)].  Unless restrained and enjoined, Garcia will continue to violate the federal securities laws.

## DEFENDANT

5. **Paul A. Garcia**, age 46, is a resident of Severance, Colorado.  Garcia is the CFO and a 50% owner of Gold Hawgs.  Garcia is the sole owner of Office Guru.

## RELIEF DEFENDANT

6.     **Office Guru Franchise Group, Inc.** is a Colorado corporation solely owned and controlled by Garcia. Garcia used Office Guru to conduct business activity unrelated to Gold Hawgs, including accounting and tax preparation services.

## RELATED PARTIES

7.     **Gold Hawgs Development Corp.** ("Gold Hawgs") is a Colorado corporation formed on August 2, 2019, with its principal place of business in Fort Collins, Colorado. Garcia is a 50% owner of Gold Hawgs.

8.     **Individual 1** owns 50% of Gold Hawgs and acted as its Chief Executive Officer.

9.     **Individual 2** was an agent for Gold Hawgs and Garcia, and solicited individuals to invest in Gold Hawgs.

## JURISDICTION AND VENUE

10.    The SEC brings this action pursuant to authority conferred on it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)], to restrain and enjoin Garcia from engaging in the acts, practices, and courses of business described in this Complaint and acts, practices, and courses of business of similar purport and object. The SEC seeks permanent injunctions against Garcia, joint and several disgorgement of ill-gotten gains derived from the conduct alleged in the Complaint plus prejudgment interest thereon from Garcia and Office Guru, and civil penalties against Garcia pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

11.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)], Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa(a)], and 28 U.S.C. § 1331.

12.     Venue is proper in the District of Colorado pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], because Garcia resides in this district, Gold Hawgs is a Colorado corporation that had its principal place of business in this district, and the offer or sale of Gold Hawgs' securities to one or more investors took place in this district.  In addition, many of the acts and transactions constituting the violations alleged occurred in this district, including misappropriation of investors' funds through transactions at financial institutions located in this district.

13.     In connection with the conduct alleged in the Complaint, Garcia, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, the means or instrumentalities of interstate commerce, or of the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.  Garcia, directly and indirectly, made telephone calls, sent and received emails and text messages, and used the Internet to conduct his fraudulent activities, and caused wire transfers of funds to be made and received through interstate commerce.

## FACTUAL ALLEGATIONS

### I.   Creation of Gold Hawgs and Solicitation of Investors' Funds through the Offer and Sale of Debentures.

14.     Garcia and Individual 1 formed Gold Hawgs in August 2019 to develop and market a digital asset, which they referred to as the "gold hawg" or gold hawg token.

15. Gold Hawgs and Garcia represented to investors and potential investors in Gold Hawgs that they were creating a gold hawg token or coin that would be backed by gold and that the company was raising funds to conduct an initial coin or token offering of gold hawg tokens.

16. To conduct the initial coin offering, Gold Hawgs planned to establish a company in Switzerland, set up a computer server in Switzerland with a website, create a marketing plan to promote the initial coin offering, hire a marketing team, and create the infrastructure needed to support the technology.

17. Gold Hawgs and Garcia promised investors in Gold Hawgs that they would receive an electronic wallet containing a "master node." The master node is a computer software program that would generate a limited number of gold hawg tokens. After the initial coin offering, these tokens would be valuable and investors could sell the tokens for a profit.

18. Specifically, investors were told that the master nodes provided the opportunity to "participate in the startup period with 'token earning privileges' that are normally afforded only to founders." Garcia and Gold Hawgs told investors, "the real opportunity [is] from earning reward tokens during the startup period when the daily rewards are share[d] by a very small number of people with the intent of selling or converting the tokens in later phases of the plan."

19. Garcia and Gold Hawgs also told investors that the tokens "will be valuable because they will be backed by physical gold that will be purchased by the Developers during the initial token offering (ITO) and stored in the Texas Depository."

20. Based on these representations, from August through October 2019, Gold Hawgs and Garcia sold 16 debentures to investors in several states, including Colorado, New York, Texas, Arizona, and Montana, for $25,000 each, raising a total of approximately $400,000.

21. Investors, who were located in various states, purchased the debentures by sending checks or wire transfers to Gold Hawgs' bank accounts in Colorado.

22. Gold Hawgs never conducted an initial coin or token offering.

23. By May of 2020, Gold Hawgs' business plan had failed and it was winding down its operations.

## II. Garcia and Gold Hawgs Raise Money through the Offer and Sale of Debentures.

24. The debentures Gold Hawgs sold to investors were memorialized as a one-page document signed by each investor and by Garcia and Individual 1 on behalf of Gold Hawgs.

25. According to the terms of the debentures, the $25,000 debt would be considered paid in full and retired when the investor was able to sell tokens worth $25,000 generated through their master node after the initial coin offering.

26. Separately from the debentures, Gold Hawgs provided a guarantee to investors that in the event the venture failed, Gold Hawgs would return 50% of the money the investors had provided to Gold Hawgs.

27. During November and December 2020, Gold Hawgs repaid all but one of the sixteen investors $6,875 each, or 27.5% of their initial $25,000 investment. Gold Hawgs was not able to fulfill its guarantee and repay 50% of the money that investors had provided to the company because it did not have sufficient funds to do so.

## III. The Debentures are Securities.

28. The debentures offered and sold to investors by Garcia and Gold Hawgs are securities as defined under the federal securities laws.

29. Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act define "security" to include "any….debenture."

30. Garcia and Gold Hawgs sold debentures to raise money for its general business operations.

31. Investors were to profit from the appreciation and sale of the tokens once Gold Hawgs established its business and conducted an initial coin offering.

32. Investors viewed the debentures as an investment in Gold Hawgs.

33. In Gold Hawgs' "Handbook," which was provided to investors and potential investors, it described the debentures as an investment opportunity and referred to purchasers of the debentures as "investors."

34. The debentures contained a disclaimer that they were not to be resold absent a securities registration statement or opinion of counsel that registration was not required.

35. Investors' money was deposited in a bank account in the name of Gold Hawgs at a bank in Colorado and pooled with other investors' funds.

36. Investors were not involved in the operations of Gold Hawgs' business and expected profits to be derived solely from the efforts of Gold Hawgs.

**IV.   Garcia and Gold Hawgs told Investors that Investors' Funds would be used for Gold Hawgs' Business.**

37. In or about August 2019, Gold Hawgs, Garcia and Individual 1 engaged Individual 2 to offer the investment in Gold Hawgs' debentures to prospective investors.

38. Based on meetings and conversations with Garcia and Individual 1, Individual 2 prepared a document referred to as the Gold Hawgs' Handbook. The Handbook described how Gold Hawgs planned to use funds raised through the sales of the debentures.

7

39. Garcia reviewed and approved a copy of the Handbook before it was sent to any prospective investors.

40. Investors generally received an oral presentation from Individual 2 prior to purchasing the debentures.

41. During these presentations, Individual 2, acting on behalf of Gold Hawgs and Garcia and at the direction of Garcia, told investors that the funds raised would be used to carry out Gold Hawgs' business plan to develop the gold hawg tokens and conduct an initial coin offering.

42. Investors also generally received the Gold Hawgs' Handbook prior to purchasing the debentures. Individual 2 generally sent the Handbook to investors by email.

43. Gold Hawgs and Garcia represented in the Handbook that money raised would be used "to help defray the costs associated with the launch of Gold Hawgs," and to "help defray the future costs associated with advertising and promoting" the venture.

44. Gold Hawgs and Garcia did not disclose in the Handbook that Garcia would use investors' funds for expenses unrelated to Gold Hawgs' business or for his personal benefit.

V. **Garcia Engaged in Deceptive Conduct and Misappropriated Investors' Funds by Diverting Money for his Personal Use.**

45. Garcia engaged in a course of conduct designed to deceive investors about the use of investors' funds and engaged in fraudulent and deceptive acts that operated as a fraud and deceit on investors. Garcia acted knowingly or recklessly, and negligently, in engaging in the fraudulent and deceptive conduct.

46. Garcia, through Gold Hawgs and Individual 2, falsely represented in the Handbook and oral presentations, that investors' funds would be used to advance the business of Gold Hawgs.

47. As detailed above, Gold Hawgs represented that the investors' funds raised would be used to "to help defray the costs associated with the launch of Gold Hawgs," and to "help defray the future costs associated with advertising and promoting" Gold Hawgs.

48. Instead, beginning in August 2019, while the sale of debentures was ongoing, and continuing through April 2020, Garcia misappropriated approximately $123,000 of the $400,000 raised from investors' funds for his own use.

49. Garcia knew or was reckless in not knowing, or should have known, that investors were told that the money raised from the sale of debentures would be used to further Gold Hawgs' business, and that his misappropriation and personal use of investors' funds were contrary to those representations.

50. Gold Hawgs raised approximately $400,000 from investors through the sale of the debentures, which funds were deposited into a bank account in Gold Hawgs' name that was located in Colorado. Gold Hawgs also maintained a second bank account in Colorado into which some of the investors' funds were subsequently transferred.

51. Garcia was the sole signatory on both Gold Hawgs' bank accounts.

52. Garcia transferred a net total of approximately $134,000 from the Gold Hawgs' bank accounts to the bank accounts of another entity that he controlled, Office Guru.

53. Office Guru did not provide any consideration to Gold Hawgs for the $134,000 that it received.

54. Garcia knew that he was transferring funds to Office Guru for which no consideration had been provided.

55. Garcia paid approximately $11,000 of Gold Hawgs' expenses from the Office Guru account throughout the Relevant Period.

56. Garcia spent the remaining $123,000 of investors' funds deposited into the Office Guru account on various personal and business expenses unrelated to Gold Hawgs.

57. Garcia's misappropriation of investors' funds resulted in substantial losses to the investors.

## VI. Garcia's Conduct was in the Offer, Purchase, or Sale of Securities.

58. As soon as Gold Hawgs began receiving investors' funds, Garcia began transferring investors' funds to the Office Guru account that he controlled and used for his other business and personal purposes. Ultimately, Garcia misappropriated approximately $123,000 of investors' funds for his personal use.

59. As such, Garcia's fraudulent conduct was in the offer or sale of securities as defined in Section 2(a)(1) of the Securities Act and in connection with the purchase or sale of securities as defined in Section 3(a)(10) of the Exchange Act.

## VII. Office Guru was Unjustly Enriched.

66. From August 2019 through July 2020, Garcia transferred approximately $196,290 of investors' funds from Gold Hawgs' bank accounts to the bank accounts of Office Guru.

67. From August 2019 through June 2020, Garcia returned to Gold Hawgs approximately $62,059 from Office Guru's bank accounts resulting in a net benefit to Office Guru of approximately $134,231.

68.     From August 2019 through June 2020, Office Guru paid approximately $11,000 in various business expenses on behalf of Gold Hawgs.

69.     After paying the $11,000 in business expenses for Gold Hawgs, Office Guru retained approximately $123,000 of misappropriated investors' funds from Gold Hawgs.

70.     Office Guru has no legitimate claim to the approximately $123,000 net amount received from Gold Hawgs.  Office Guru provided no consideration, reciprocal goods, or services in exchange for the $123,000.

71.     Garcia, as the owner of Office Guru directed the expenditure of the $123,000 from the Office Guru bank account and received, directly or indirectly, the benefit of the $123,000.

## CLAIMS FOR RELIEF

### First Claim for Relief
**(Against Garcia)**
**Section 17(a)(1) and (3) of the Securities Act**

72.     The SEC realleges and incorporates by reference the above paragraphs 1 through 59 as though fully set forth herein.

73.     Garcia, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly, recklessly, and negligently: (a) employed devices, schemes, or artifices to defraud and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

11

74. By engaging in the conduct described above, Garcia violated and, unless restrained and enjoined, will again violate Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

**Second Claim for Relief**
**(Against Garcia)**
**Section 10(b) and Rule 10b-5(a) and (c) of the Exchange Act**

75. The SEC realleges and incorporates by reference the above paragraphs 1 through 59 as though fully set forth herein.

76. Garcia, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly and recklessly: employed devices, schemes, or artifices to defraud; and engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

77. By engaging in the conduct described above, Garcia violated and, unless restrained and enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

**Third Claim for Relief**
**(Against Office Guru, Relief Defendant)**
**Disgorgement from Relief Defendant –**
**Section 6501 of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283 and Equitable Principles**

78. The SEC realleges and incorporates by reference the above paragraphs 1 through 71 as though fully set forth herein.

79. Relief Defendant Office Guru received and held proceeds of the fraud.

80. Relief Defendant Office Guru has no legitimate claim to these illicit proceeds, having obtained the funds under circumstances in which it is not just, equitable, or conscionable for it to retain the funds and therefore he been unjustly enriched.

81. Relief Defendant Office Guru should be required to disgorge all ill-gotten gains which inured to its benefit under the equitable doctrines of disgorgement, unjust enrichment, and constructive trust.

**PRAYER FOR RELIEF**

WHEREFORE, the SEC seeks the following relief:

1. Find that Garcia committed the violations alleged in this Complaint.

2. Find that Relief Defendant Office Guru received ill-gotten gains as a result of Defendant's activities alleged in the Complaint and was unjustly enriched.

3. Enter an injunction, in a form consistent with Rule 65 of the Federal Rules of Civil Procedure, permanently restraining and enjoining Garcia from violating, directly or indirectly, the laws and rules he is alleged to have violated in this Complaint.

4. Enter an injunction, in a form consistent with Rule 65 of the Federal Rules of Civil Procedure, permanently restraining and enjoining Garcia from, directly or indirectly, including, but not limited to, through any entity owned or controlled by Garcia, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Garcia from purchasing or selling securities for his own personal account.

5. Order Garcia and Office Guru to disgorge, on a joint and several basis, all ill-gotten gains from the violations alleged in this Complaint, and order them to pay prejudgment interest on such ill-gotten gains.

6. Order Garcia to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

7. Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The SEC demands a trial by jury on all claims so triable.

Dated: January 18, 2022.                                   Respectfully submitted,

By:  */s/* Leslie J. Hughes
Leslie J. Hughes
Colorado Bar No. 15043
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
Telephone: 303.844.1086
Email: HughesLJ@sec.gov
*Attorney for Plaintiff*
*U.S. Securities and Exchange Commission*